NAHUM BROOKS, executor, *vs.* GUY C. GOSS and another.

61 307
92 208

*Trespass de bonis by executor. Evidence.*

An action of trepass *de bonis* to recover for timber and trees cut from land mortgaged is properly brought by the executor of the deceased mortgagee for the benefit of the person beneficially interested under the will, if the severance was before the death of the mortgagee.

The defendants in this action justified the removal of the growth from the real estate mortgaged, by virtue of an alleged parol license from the deceased mortgagee, and called a witness who testified to two conversations in the course of which such license was given. Upon cross-examination this witness added that she made a memorandum of these conversations at the time each occurred and produced them, and they were put into the case by the plaintiffs: *held*, that they were properly received as tests of the accuracy of the witness' recollection of the conversations, and of the degree of credibility to be attached to her testimony.

To afford ground of exception the testimony admitted must be of such a nature as to work prejudice to the excepting party.

Exceptions will not lie to the admission of a written memorandum of a conversation which the witness has detailed upon direct examination, when such memorandum is elicited and introduced upon cross-examination.

In this action the executor not becoming a witness, the defendants were precluded from testifying.

Declarations of the plaintiff, made before his appointment as executor, *held* inadmissible.

Evidence of the entry of "neither party" in a suit between the plaintiff, in his fiduciary capacity, and the person under whom defendants claim, and that such suit was for the same cause of action as the present, is inadmissible.

ON EXCEPTIONS and motion for a new trial.

TRESPASS *de bonis asportatis* brought by Nahum Brooks, as executor of the will of late Mary Hathorn, of Woolwich, who d:ed about the last of September, 1868, and this plaintiff was appointed to the trust aforesaid Nov. 2, 1868. In the preceding year Mrs. Hathorn owned land in Woolwich known as " the Joseph Blackman farm," having inherited it from her sister, Susannah Blackman. August 26, 1867, she conveyed this estate to John W. Gray who, at the same time, mortgaged to her one undivided

half of the farm, to secure a note of $1,350, payable in five years from that date, to her order, with interest, given for so much of the purchase money. John W. Gray afterwards sold to Goss & Sawyer, the defendants, who were ship-builders, the oak and other timber and trees standing on this land, and they cut and removed it in April, 1868. To recover the value of this growth, and the damages occasioned by taking it, this suit was brought March 17, 1870.

The last codicil to Mary Hathorn's will contained this provision : " In addition to my former provisions in favor of the Free Will Baptist Foreign Mission Society and the Free Will Baptist Home Mission Society, I give, bequeath, and devise to those two societies, in equal portions, all and whatever property, money, goods, and estate, real, personal, or mixed, I have, or may have inherited, or which I have received, or shall hereafter receive, or which may or shall be derived or received in my right, from the estate of my late sister, widow Susannah Blackman, late of Woolwich, deceased ; to have and to hold the same by the same title and in the same manner as I myself do, can, or might hold the same."

The writ contained two counts, one describing the premises from which the timber was cut and alleging the testatrix's ownership of an undivided moiety of it, and the second alleging the cutting and taking of " two hundred tons of oak timber, of which the said Mary, in her lifetime, owned and possessed one undivided half ; " but in both the plaintiff declared in his capacity of executor, and in the first count that the cause of action survived to him as such executor. The defendants plead the general issue with a brief statement " that the acts complained of, etc., were done under the permission of Mary Hathorn, in her lifetime, and that the plaintiff, in his said capacity, cannot maintain this action, in its present form, for any such acts done under such permission ; that said Mary, in her lifetime, was the mortgagee out of possession, and there never has been any breach of the conditions of said mortgage during her lifetime, and as such she was but a tenant in common with the other owners of said land ; that John W. Gray,

the mortgager of an undivided moiety of said land, had authority and permission from said Mary, then living, to cut timber on said premises; that defendants purchased some timber of said Gray, who was then in possession of said land, the conditions of said mortgage not having been broken; that no action survives to the executor in the premises as averred. by him; that he cannot recover in this action, because if any action lies it should lie in *quare clausum* in the name of the special legatee under the will of said Mary; that the act complained of is an injury to real estate, and lies in the name of the heirs of an intestate, or in case of special bequest or devise in the name of the legatees or devisee; that Mary Hathorn specially devised this property, and the executor as such has no action; that plaintiff has no estate in the timber described in his writ."

After proof by two or three witnesses of the quantity and value of the timber cut from the Blackman farm by Goss & Sawyer, the plaintiff introduced the probate records of the will, several codicils thereto, and of the inventory of the estate, showing a total valuation of $7,136.15, and of his own appointment and qualification as executor. He then rested his case, not having been a witness in his own behalf.

The first witness called for the defense was John W. Gray, the mortgager before-mentioned, who testified as follows:—

" I was in possession of this property in 1868. I got permission from Mrs. Hathorn to cut timber on it shortly after I went on to it in the spring. I got permission to sell timber to Goss & Sawyer. The permission was by word of mouth. I was in her house. I went to Mrs. Hathorn, to aunt Hathorn, and told her that I had a chance to sell the timber to Capt. Goss, Sawyer & Co.; 'well,' says she, 'if you have got a chance to sell the timber sell it and do the best you can;' and I did so. After I sold it and received pay for it I offered to pay Mrs. Hathorn the money; she told me she did not know what she should do with the money if she had it; told me to keep it; that I did not know what might happen. My mother was present at the time. Goss & Sawyer

paid me for the timber they had of me." This was the whole of his testimony in chief.

The next witness, Sarah Gray, called by defendants, testified :—

"I reside in Woolwich; am John W. Gray's mother. I reside in the same house with him and did in 1868. I went to Mrs. Hathorn's with him April 23, 1868; he told Mrs. Hathorn that he had a chance to sell the timber to Capt. Goss, of Bath. She told him to do so. I was there with him in June, 1868. My son told Mrs. Hathorn that he would pay her for the farm, his part; she told him to keep the money; she said I don't want it, I don't know what I should do with it if I had it. I heard that distinctly. In February, 1868, Mr. Brooks said to her, if she was a mind to stand out, that they should not have one cent of property." This was the whole of her direct testimony.

Both of these witnesses were subjected to a long and searching cross-examination, and the plaintiff's counsel contended that inconsistencies and contradictions were developed thereby. In the course of Mrs. Gray's cross-examination it appeared that she had with her what purported to be memoranda of the two conversations had by her son with Mrs. Hathorn, April 23, 1868, and June 15, 1868. They were handed by her to the plaintiff's counsel, who was permitted to read them to the jury against the objection of the defendants. The papers produced by her she said were not the original, but were copied by her in ink from those originally written in pencil at the time of the respective conversations. Two of these copies she said were made upon the same day, some time in the month of February, 1869, and accounted for the ink of one being paler than the other, when her attention was called to that fact, by saying that the ink was too thick and she added vinegar which made it paler when she made the second copy. Both of these witnesses swore that $1,000 of the $1,350 which John W. Gray offered to pay Mrs. Hathorn was obtained of Benjamin Bailey; but this gentleman, when subsequently called by the defense, denied that he ever paid John Gray so

much money at one time, or in the aggregate prior to April 23, 1868. Mr. Bailey bought three-eighths of this land of John W. Gray, and took timber from it for which he afterwards settled with the executor, paying $800 upon a contract with the beneficiaries under the will through Mr. Brooks, acting in their behalf, for their interest in this land, and in full for the timber cut by him from it, with power to occupy the premises precisely as the mortgagees might, and an agreement that the mortgage should be assigned to Bailey after the claims of Mr. Brooks, as executor, and of the legatees under the will against John W. Gray and Goss & Sawyer were adjusted. Mr. Bailey was asked by the defendants if he ever had any conversation with the executor, after witness had cut timber on this land, with regard to the timber growing on the Blackman farm or that they had been cutting there, and whether or not Mr. Brooks told the witness anything "in regard to the understanding or permission that was given by Mrs. Hathorn to John W. Gray about cutting off wood and timber from these premises;" but upon Mr. Bailey's statement that the conversation referred to took place before the time of Mr. Brooks' appointment as executor the court excluded the testimony, the plaintiff not having been a witness. Mr. Bailey said the conversation was the last of September, or first of October, 1868, and Mr. Brooks was appointed executor Nov. 2, 1868. The defendants also offered a writ in favor of the present plaintiff, as executor of Mary Hathorn's will, against John W. Gray, and the docket entries to show the settlement of that suit, and offered to prove that it covers the property in this suit and that it is settled; but the court excluded this testimony. The defendant, Goss, then offered himself as a witness, but was not admitted. The memoranda, or copies, produced by Mrs. Gray, as before stated, were as follows:—

WOOLWICH, April 23, 1868.

My son told Mrs. Hathorn that he had got a chance to sell the timber to Capt. Goss, of Bath; she told him to cut it and sell it, and to do the best he could with it; he asked her if there would

be any trouble, she said no; then he asked her if Mr. Brooks would trouble him, she said·he had nothing to do with it, you have got a deed and Mr. Brooks never can trouble you.

                                                    SARAH GRAY.

                                                    June 15, 1868.

My son offered to pay Mrs. Hathorn, she told him to keep the money, she said she did not want it; she says you don't know what may happen, if I had it I shouldn't know what to do with it.

                                                    SARAH GRAY.

Mrs. Hathorn told me before my son in February, 1868, that Mr. Brooks said if she was a mind to stand it out that the Gray children could not get one cent of that Blackman property.

                                                    SARAH.

Upon the foregoing testimony and pleadings the defendants' counsel asked the court to rule that this action cannot be maintained in its present form, it being for an undivided half part of certain timber alleged to have been taken by said defendants, and because the plaintiff in his said capacity had no interest in the property alleged to have been taken, and that the legatees and devisees thereof, with the consent of the plaintiff, had conveyed all their interest in the same to one Benj. F. Bailey; that because by the will and codicils of the said testatrix all that property vested specifically in the said devisees and legatees; that they alone could maintain an action therefor unless the said property should be required for payment of testatrix's debts, all of which instructions the judge presiding refused to give, but instructed the jury that " it is objected on the part of counsel for the defense that this action cannot be maintained for various reasons, and without going into a specification of those grounds relied upon by the defendants against the maintenance of this action, in order to give progress to this trial and to enable you to pass upon an important question of fact, I instruct you that it is competent for this plaintiff, in his capacity, to maintain this action, if he establishes his claim by competent evidence."

Relative to the several memoranda made by the witness for the defendant, Mrs. Sarah Gray, above set forth, the judge instructed the jury that these papers had been permitted to go before them, " not for the purpose of allowing you to take into consideration the memorandum itself, the language of the memorandum, the meaning of it, the purport of it, but simply, as the counsel for the plaintiff claims, to satisfy you that it discredits her and shows conclusively that all of these memoranda introduced by the plaintiff and elicited from her were made a long time or some time after the meeting at Mrs. Hathorn's, if there ever was any such made."

The counsel for the defendants requested the court to instruct the jury that they might take into consideration as a fact in the case the circumstance that the plaintiff, who was present at the trial, does not offer himself as a witness in the case, which the judge refused, but instructed the jury " that he (the plaintiff) may or may not go upon the stand, and that they may take into consideration the fact that he does not go upon the stand, but that they will not be authorized to allow that to operate to his prejudice unless they shall be satisfied from the evidence in the case that he knows facts which would operate to his prejudice and declines to go upon the stand for that reason."

The defendants except to the admission of the testimony objected to by them and also to the rejection of the testimony offered by them, which was excluded, and to the foregoing rulings and refusals to rule, as hereinbefore stated. The verdict was for the plaintiff, and the defendants moved to set it aside as against law and evidence and the weight of evidence, and because it was unjust and for excessive damages.

*Tallman & Larrabee*, for defendants.

The trees were cut by Mrs. Hathorn's consent, and the title thereto passed to the purchasers; otherwise, this action could be maintained. *Hill* v. *Penney*, 17 Maine, 409. But on such a state of facts it cannot. The parties were not tenants in common. *Norcross* v. *Norcross*, 105 Mass. 265. Hence, under the peculiar

circumstances of this case, the burden is on the plaintiff to prove that his testatrix did not consent to the cutting. But, if not, we say her consent is fully proved. Brooks' statements should have been admitted, considering his relations with the deceased, and that he was present at the conversation between her and Mr. Gray.

The plaintiff, as executor, had no interest in this property, because it was specifically devised, and he assented thereto and guaranteed the performance of the agreement between the devisee and Bailey. *Andrews* v. *Hunnemann*, 6 Pick. 128. As the parties were not tenants in common, Gray was not obliged to notify Mrs. H. of his intention to cut under R. S., c. 95, § 5. She was simply a mortgagee of a moiety, not in possession. *Kimball* v. *Lewiston, etc.*, 55 Maine, 499. The circumstances show she waived her rights.

The executor was a nominal party, suing for the benefit of the legatees ; therefore Goss should have been permitted to testify. R. S., c. 82, §.86, item 3. 2 Bouv. Law Dict. 232.

*J. S. Baker* and *N. M. Whitmore*, for plaintiff.

As to the motion. The jury simply refused to believe the story of Mrs. Gray and her son, though they both testified to a parol license in precisely the same words. Mrs. Gray says she went to see her aunt Hathorn upon her death-bed, prepared with paper and pencil to take down her conversation ! Not only the inherent improbability of their story, but the strong interest they had to manufacture it, and their mode of telling it, discredited them.

This action could be maintained by the executor even if Mrs. Hathorn had owned the land absolutely. *Hill* v. *Penney*, 17 Maine, 409 ; *Wilbur* v. *Gilman*, 21 Pick. 250. Certainly, then, she can when she is only interested as mortgagee.

DICKERSON, J. This was an action of trespass *de bonis asportatis* brought by the executor of the last will and testament of the mortgagee of the premises from which the timber was taken.

The counsel for the defendants contended that the action was improperly brought in the name of the executor; but we think this objection is not tenable.

Real estate held by an executor in mortgage is deemed personal assets held by him in trust for the persons who would be entitled to the money, if paid; when paid, he may execute a release of the estate and account to the *cestui que trust* for the sum received, and if not paid, he may sell it, as he could personal estate, and assign the mortgage and debt. R. S. of 1857, c. 65, §§ 22, 23.

The first two memoranda admitted in evidence, against the defendants' objection, were elicited on cross-examination of their witness. That witness testified on direct examination that the mortgagee gave the mortgager, the witness' son, a parol license to sell the timber sued for, and also that he offered the mortgagee $1,350, the amount of the mortgage note, which the mortgagee declined to take, saying " she did not know what to do with the money." The testimony shows that the chief value of the land was in the timber, and that the mortgagor, at the time of the pretended tender of $1,350, was poor. The witness testified that the original memoranda were made at the time of their date. Those memoranda related directly to the two grounds relied on in defense, license and payment of mortgage note. In connection with the other evidence they had a material bearing upon the credibility of the witness, and therefore were clearly admissible.

The other memorandum was immaterial, and could not have damaged the defendants; besides, the same testimony was drawn out on the direct examination; nor have they any valid ground of complaint that the court restricted the application of the several memoranda in the manner specified in the exceptions.

As the executor did not offer himself as a witness the defendants were properly excluded. The other rulings were also unobjectionable.

The cutting and carrying off the timber were not seriously controverted. The defendants relied upon a parol license and payment of the mortgage debt. These questions were fairly sub-

mitted to the jury, and it was their province to determine them. When we consider the conflict between Bailey and Gray, the defendants' witnesses, in regard to the latter's borrowing the money of the former to pay the mortgage note with, and the improbability of the testimony of the mortgager and his mother, it is not strange that the jury discredited the testimony upon the two grounds of defense, and returned a verdict for the plaintiff.

*Exceptions and motion overruled.*

APPLETON, C. J.; WALTON, BARROWS, DANFORTH, and VIRGIN, JJ., concurred.